United States District Court
Southern District of Texas

**ENTERED**

November 20, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KELLY VANDENBERG, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-379 |
| | § | |
| UNIVERSITY OF SAINT THOMAS, aka | § | |
| UNIVERSITY OF ST. THOMAS | § | |
| (HOUSTON) | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kelly Vandenberg ("Vandenberg" or "Plaintiff"), sued her former employer, the University of Saint Thomas ("St. Thomas" or "Defendant"), under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging that she was discriminated against based on her race. Vandenberg also asserts that St. Thomas retaliated against her in violation of Title VII of the Civil Rights Act. Before the Court are Defendant's Renewed Motion for Summary Judgment and Defendant's Motion to Strike Portions of Plaintiff's Summary Judgment Evidence. (Dkt. 60 and Dkt. 69)

After reviewing the motions, the responses, the replies, the summary judgment record as a whole, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** St. Thomas's motion to strike. (Dkt. 69) The Court **GRANTS** St. Thomas's motion for summary judgment. (Dkt. 60)

## BACKGROUND

Poldi Tschirch, who is White, hired Vandenberg, who is also White, as an assistant professor at St. Thomas's School of Nursing in May 2012. Vandenberg was employed under a twelve-month, non-tenure-track contract which expired in June 2013. (Dkt. 68-1 at 64:25–67:10) Vandenberg's employment contract was renewed for the next three academic years, ending with the 2015–2016 term. (Dkt. 60-F at 2–4) In addition to teaching, Vandenberg served as the course coordinator for some of her courses. (Dkt. 60-C at 69:4–6)

Vandenberg contends that her supervisor, Angela Chambers, discriminated against her by giving a colleague, Dr. Lucindra Campbell-Law, preferential treatment. (Dkt. 68 at 232:19-25, 235:14–238:8, 312:14–23) Specifically, Vandenberg alleges that Chambers permitted Campbell-Law to go on a study abroad trip but refused to allow Vandenberg to attend a different study abroad program, gave Campbell-Law more access to committees, and stopped Vandenberg's research. (Dkt. 68 at 232:19-25, 235:14–238:8, 312:14–23) Vandenberg claims that she was fired in May 2016, shortly after she complained about being discriminated against, and was replaced by Yvette Rolle, who is Black.

In November 2015, Vandenberg was placed on a Performance Improvement Plan ("PIP"). (Dkt. 60 at Ex. K) According to Tschirch and Campbell-Law, Vandenberg failed to collaborate with stakeholders in planning and implementing her courses and was not effectively communicating with students. (Dkt. 60 at Ex. K) Vandenberg also received complaints from students in which they said that Vandenberg disregarded their feelings and did not conduct her course in a manner that was conducive to holistic learning. (Dkt.

60-C at 100:7–101:24, 125:19–126:10) On November 23, Vandenberg met with her supervisor, Chambers, who is Black, and Randy Graham, Associate Vice President—Human Resources, who is White, to go over the PIP. (Dkt. 60-C at 161:10–19, 231:1–3) Vandenberg was removed from her position as a course coordinator, although she continued teaching as an assistant professor. Vandenberg claims that another White employee, Pamela Hodges, experienced similar treatment at St. Thomas and was also put on a PIP based on false allegations and then fired after complaining about discrimination. (Dkt. 68 at Ex. 5; Dkt. 68 at Ex. 23)

On December 21, 2015, Vandenberg wrote a letter to Tschirch, Chambers, and Graham, alleging that the allegations in the PIP were false and racially motivated. (Dkt. 7 at p. 4; Dkt. 68 at Ex. 11) Graham met with Vandenberg for the first time on January 22, 2016 to investigate her complaint. (Dkt. 60-C at 119:25–120:3; Dkt. 7 at 4) According to Defendant, Tschirch decided not to renew Vandenberg's employment contract on January 22, 2016. (Dkt. 60-B at para. 9; Dkt. 60 at Ex. B-1) Vandenberg remained employed as an assistant professor until May 13, 2016. (Dkt. 60 at Ex. L)

Vandenberg filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 23, 2016, alleging that St. Thomas had discriminated against her based on her race and retaliated against her for protected activities. (Dkt. 60 at Ex. M) Vandenberg updated her charge to add allegations of discrimination and retaliation based on the nonrenewal of her contract on July 14, 2016. (Dkt. 60 at Ex. N) Vandenberg filed this lawsuit on February 8, 2018, alleging

discrimination based on disparate treatment, discrimination based on a mixed-motive theory, and retaliation under Title VII. (Dkt. 53 at paras. 50–61)

**APPLICABLE LAW**

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). The court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). A fact is material if "its resolution could affect the outcome of the action." *Nunley v. City of Waco*, 440 F. App'x 275, 277 (5th Cir. 2011).

If the movant produces evidence that tends to show that there is no dispute of material fact, the nonmovant must then identify evidence in the record sufficient to

establish the dispute of material fact for trial. *Celotex*, 477 U.S. at 321–23. The nonmovant must "go beyond the pleadings and by her own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324). The party opposing summary judgment must identify specific evidence in the record and articulate how that evidence supports its claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertion, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, L.L.C.*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). Allegations in a plaintiff's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ([P]leadings are not summary judgment evidence."); *Johnston v. City of Hous., Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995) (For the nonmovant, "only evidence—not argument, not facts in the complaint—will satisfy the burden.") (quoting *Solo Serve Corp. v. Westown Assoc.*, 92 F.2d 160, 164 (5th Cir. 1991); *see also Grizzle v. Traveler's Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (noting that an employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred . . . is simply insufficient to support a jury verdict in plaintiff's favor"); *Int'l Shortstop v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) ("Summary judgment, to be sure, may be appropriate even where elusive concepts such as motive or intent are at issue . . . if the nonmoving party rests merely upon improbable inferences,

and unsupported speculation.") (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (alteration in original)). "If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted." *Celotex*, 322–23.

### B.  St. Thomas's Motion to Exclude Certain Summary Judgment Evidence

The admissibility of evidence is "governed by the same rules, whether at trial or summary judgment." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387–88 (5th Cir. 2009). Although the substance or content of the evidence needs to be admissible, "the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). "[T]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id*. In determining whether a dispute over a material fact exists, courts may not consider unauthenticated documents or hearsay. *Johnson v. Spohn*, 334 F. App'x 673, 677–78 (5th Cir. 2009). Legal conclusions and statements made without personal knowledge are also inadmissible. *See* Fed. R. Evid. 602, 701, 702.

Affidavits and declarations used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A nonmoving party may not manufacture a dispute of

fact merely to defeat a motion for summary judgment by submitting an affidavit that impeaches prior testimony without explanation. *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). "Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)). This is especially true when no explanation is given for the discrepancy. *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 449 (5th Cir. 2018) (per curiam). However, when "considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier statement." *Winzer*, 916 F.3d at 472 (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980)).

### C.  Title VII and Section 1981

Claims of intentional discrimination under Title VII fall under the same rubric of analysis as claims of intentional discrimination under 42 U.S.C. § 1981. *See, e.g.*, *Raggs v. Miss..Power & Light Co.*, 278 F.3d 463, 488 (5th Cir. 2002). Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII also makes it unlawful for an employer to retaliate against employees who have opposed discrimination or who have engaged in "protected activities." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).

Where a plaintiff does not provide direct evidence of discrimination, Title VII claims proceed under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). "Analysis under the well-established *McDonnell Douglas* framework proceeds as follows: (1) the plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the employment action; and if that burden is satisfied, (3) the plaintiff must offer evidence that the proffered reason is a pretext for racial discrimination." *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 327 F. App'x 472, 482 (5th Cir. 2009). To establish a prima facie case of discrimination, Vandenberg must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside the protected class, or, was treated less favorably than "similarly situated" employees who were not members of the protected class. *See, e.g., Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). The plaintiff must "produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). The plaintiff's evidence must show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully

discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000).

Under the discrimination prong of a Title VII claim, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

To establish a claim for retaliation under Title VII, Vandenberg must show that "(1) [she] engaged in activity protected by Title VII; (2) the employer took adverse employment action against [her]; and (3) a causal connection exists between that protected activity and the adverse employment action." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). "[T]he range of employer actions prohibited by title VII's anti-retaliation provisions is broader than the range covered by its anti-discrimination provisions." *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). To be considered an adverse action under the retaliation prong, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57.

## ANALYSIS

### A.  St. Thomas's Motion to Strike

1.  *Statements from Vandenberg's Declaration About Tschirch's Involvement and Responsibilities at the School of Nursing and Other Employees' Performance*

St. Thomas asks the Court to exclude statements from Vandenberg's Declaration (Dkt. 68 at Ex. 3) about Tschirch's involvement and responsibilities at the School of Nursing on the grounds that they are entirely speculative and not based on personal knowledge. St. Thomas points in particular to these statements:

- <u>Paragraph 1</u>: Tschirch did not directly supervise us in any way, and everything had to go through Dr. Chambers first in the chain of command. For example, Dr. Tschirch was not involved in changing the classes from lecture to online; that was Dr. Chambers's decision.

- <u>Paragraph 5</u>: Dr. Tschirch was not involved in my performance improvement plan ("PIP"). It was [Chambers] that made the choice to put me on a PIP and wrote up all the false allegations because of my race . . . Finally, Dr. Tschirch did not make the decision to terminate me, at least without [Chambers] convincing her with lies to do it based on the fact that I am white.

St. Thomas argues that as an assistant professor, Vandenberg was not involved in personnel or administrative decision making and as such, has no basis of personal knowledge for these statements. Vandenberg asserts that as an employee of the School of Nursing, Vandenberg had knowledge about who her supervisors were. She also asserts that she knows who placed her on the PIP because she was there when it was delivered.

"A district court may rely upon affidavits in the summary judgment context where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.'" *Lohn v Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812, 844 (S.D. Tex. 2009) (citing

*DIRECTV, Inc. v. Budden*, 420 F3d 521, 530 (5th Cir. 2005)). Viewing the evidence in the light most favorable to the nonmovant, Vandenberg could have personal knowledge of the chain of command at the School of Nursing and of who her supervisors were. Therefore, St. Thomas's motion to strike paragraph 1 of Vandenberg's declaration is **DENIED**.

St. Thomas also asks the Court to strike the following statement by Vandenberg about the performance of other faculty members at the school:

- Paragraph 4: During my tenure as Assistant Professor at the St. Thomas School of Nursing, all faculty had student complaints. [Campbell-Law] told me that she also received negative student comments in her IDEA scores.

St. Thomas argues that Vandenberg lacks personal knowledge about the performance of other faculty members at the school and that this statement contradicts Vandenberg's deposition testimony that she has no knowledge about Campbell-Law's IDEA scores or whether students complained about her. (Dkt. 60-C at 151:16–152:1) Vandenberg responds that because the evidence is capable of being presented in a way that is admissible at trial, either through the present sense impression hearsay exception, Fed. R. Evid. 803(1), as the admission of a party opponent, Fed. R. Evid. 801(d)(2), or by compelling Campbell-Law to testify at trial.

As St. Thomas points out, Campbell-Law's alleged statement to Dr. Vandenberg would not be admissible at trial through the present sense impression hearsay exception, which applies only to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1). Likewise,

the statement would not be admissible as an admission of a party opponent. For a statement to qualify as a party admission in an employment discrimination case in the Fifth Circuit, the declarant must be "involved in the decision-making process affecting the employment action involved." *Lay v. Singing River Health Sys.*, 694 F. App'x 248, 257 (5th Cir. 2017). Because Vandenberg has not contended that Campbell-Law was involved in any of the adverse employment actions she experienced, this statement would not be admissible as an admission by a party opponent. However, Campbell-Law may be compelled to testify at trial, so this information is capable of being presented in a manner that is admissible at trial.

Vandenberg's statement does not sufficiently contradict her deposition testimony to be considered a "sham affidavit." "Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)). Here, Dr. Vandenberg's declaration statement that Dr. Campbell-Law told her she received negative reviews from students is consistent with Dr. Vandenberg's deposition. In her deposition, Vandenberg stated, "Lucindra Campbell-Law told me [the students] tore me up too." (Dkt. 60-C at 151:8–15)

Accordingly, Defendant's motion to strike paragraph 4 is **DENIED**.

2. *Vandenberg's Statements that St. Thomas's Decisions Were Motivated by Race*

St. Thomas next asks the Court to strike statements from Vandenberg's declaration that St. Thomas's decisions were motivated by race. As examples, St. Thomas lists:

- <u>Paragraph 2</u>: "I understood that my contract would be renewed each year, but for being treated unfairly because of my race."

- <u>Paragraph 3</u>: "This is just a vague accusation [Chambers] made up, so she used to get rid of me because I am white."

- <u>Paragraph 4</u>: "I was singled out for discipline over such scores because of my race."

- <u>Paragraph 5</u>: "It was [Chambers] that made the choice to put me on a PIP and write up all the false allegations because of my race . . . Finally, Dr. Tshirch did not make the decision to terminate me, at least without Angelina convincing her with lies to do it based on the fact that I am white."

- <u>Paragraph 6</u>: "Additionally, [Chambers] and [Cambell-Law] were able to take a group of students on the Haiti study abroad that was way smaller than what the university allowed, all because they were black."

St. Thomas argues that these statements are conclusory, speculative, and not valid summary judgment evidence. St. Thomas also argues that the statements should be struck because they contradict Vandenberg's deposition testimony without giving an explanation for the discrepancy. Vandenburg responds that her statements go beyond conclusory statements to give the basis for her conclusions.

Vandenberg's statements that these decisions were motivated by race are conclusory and speculative. As such, the defendant's motion to strike these portions of the statements is **GRANTED**. The defendant's motion to strike paragraph 5 in its entirety is **GRANTED** because paragraph 5 directly contradicts Vandenberg's deposition

testimony that she knew that Tschirch was involved in creating the PIP. (Dkt. 68-1 at 210:2–16) Defendant's motion to strike the rest of the factual allegations in the aforementioned paragraphs is **DENIED** because they are not sufficiently contradictory to the deposition testimony to constitute a sham affidavit. *See Hackett v. United Parcel Serv.*, 736 F. App'x 444, 449 (5th Cir. 2018) (per curiam).

### 3. *Statements from Hodges's Declaration*

St. Thomas asks this Court to strike several paragraphs from Pamela Hodges's declaration (Dkt. 68 at Ex. 5) on the grounds that the statements are not based on personal knowledge and are conclusory. Specifically, St. Thomas asks the Court to strike:

- <u>Paragraph 1:</u> "Poldi Tschirch did not have any involvement or directly supervise any daily activities in the School of Nursing, nor other matters, such as changing class layouts, performance improvement plans, or study abroad participation without us going through Dr. Chambers first in the chain of command. During my tenure at the University of St. Thomas, Poldi Tschirch never overruled any decision of Dr. Chambers with regard to nursing faculty."

- <u>Paragraph 3</u>: [Vandenberg] never had a 'performance issue' or 'pattern' of failing to collaborate effectively with key stakeholders in course planning and implementation . . . [Vandenberg] and I worked hard to collaborate effectively with key stakeholders in course planning and implementation. [Vandenberg] and I worked hard to communicate with [Chambers] and work with others, including [Campbell-Law], in planning and implementing our courses in students' best interests."

- <u>Paragraph 6</u>: "During my tenure as Associate Professor at the University of St. Thomas School of Nursing, the only real difference between an 'Associate Professor,' 'Assistant Professor,' and 'Professor' was the title itself; the duties and

responsibilities were the same for both titles because we were all just 'faculty.'"

- <u>Paragraph 4</u>: "During my tenure as Associate Professor at the University of St. Thomas School of Nursing, all of the faculty had subjective student complaints, including Lucindra Campbell-Law, who is black. I know this from talking with the other faculty and discussing their own student complaints."

Vandenberg responds that Hodges's employment at St. Thomas provided her with the personal knowledge required to make those statements. This Court finds that, with the exception of the statement in paragraph 1 that "Poldi Tschirch never overruled any decision of Dr. Chambers with regard to nursing faculty," Hodges could have personal knowledge of each of the statements sufficient to testify to them at trial. Therefore, the defendant's motion to strike these statements is **DENIED**, with the exception of the statement in paragraph 1.

St. Thomas also argues that the following statements from Hodges's declaration are conclusory and irrelevant to Vandenberg's claim:

- <u>Paragraph 2</u>: "During my tenure as an Associate Professor at the University of St. Thomas School of Nursing, I understood that my contract would be renewed each year, but for being treated unfairly because of my race."

- <u>Paragraph 3</u>: "[Chambers's] vague accusation that Vandenberg and I didn't collaborate effectively with key stakeholders in course planning is something she fabricated to get rid of us because [Vandenberg] and I are both white.

Vandenberg responds that Courts find "me too" evidence highly probative of discrimination, especially when the employees are in the same department, supervised by the same people, and subject to the same kind of treatment.

"A plaintiff in Title VII discrimination cases can introduce anecdotal evidence of discrimination against other employees to establish that a defendant's reasons are a pretext for discrimination." *Jackson v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 172 F. Supp. 2d 860, 878 (S.D. Tex. 2001), *aff'd*, 54 F. App'x 404 (5th Cir. 2002). For anecdotal evidence to be admissible, the other employees must be similarly situated to the plaintiff. *Id*.

Because Vandenberg and Pamela Hodges had different job titles and responsibilities (Dkt. 68-3 at para. 1; Dkt. 68-5 at para. 1), they are not similarly situated. *Richardson v. United Airlines*, No. 4:18-CV-1707, 2019 WL 6330718, at *8 (S.D. Tex. Oct. 31, 2019), *adopted*, 2019 WL 6330482 (S.D. Tex. Nov. 26, 2019) ("Because the two women had different job titles and responsibilities, they are not similarly situated."). Accordingly, Pamela Hodges's own claim of discrimination against St. Thomas is improper anecdotal evidence and Defendant's motion to strike these statements is **GRANTED**.

St. Thomas also asks the Court to strike several of Hodges's statements that Chambers's decisions were motivated by race because they are conclusory and irrelevant to Vandenberg's claims. St. Thomas targets the following statements:

- <u>Paragraph 2</u>: "During my tenure as an Associate Professor at St. Thomas School of Nursing, I understood that my contract would

be renewed each year, but for being treated unfairly because of my race."

- Paragraph 3: Angelina Chambers's vague accusation that Vandenberg and I didn't collaborate effectively with key stakeholders in course planning is something she fabricated to get rid of us because [Vandenberg] and I are both white."

- Paragraph 5: "The performance improvement plan ("PIP") Angelina put me on was just so she could terminate me later because I was white."

- Paragraph 7: "I personally observed that the actions and conduct of Dr. Chambers in their administration of the School of Nursing were not based on objective criteria or based on professional standards. I know this because despite Angelina Chambers putting me on a PIP, I was awarded Advisor of the Year in the fall of 2015."

- Paragraph 8: "I personally observed the actions of Angelina Chambers that were deliberately calculated to favor African-American faculty members over white faculty members in a discriminatory manner.

In response, Vandenberg cites *Cunio v. Tex. Dep't of Mental Health & Mental Retardation* for the proposition that in deciding whether two employees are similarly situated for the purpose of admitting anecdotal evidence, "the determining factor is whether the employees had nearly identical circumstances 'from the perspective of their employer at the time of the relevant employment decision.'" No. 6:04-CV-342, 2006 WL 8441574, at *2 (E.D. Tex. Aug. 25, 2006) (quoting *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004)). However, *Cunio* went on to find that the plaintiff had not presented sufficient evidence that the other employee was similarly situated to her

because the two employees had different job titles, different responsibilities, and different histories of protected conduct. *Id*.

Vandenberg has failed to show that Hodges is sufficiently similar to her for her experiences to be considered as anecdotal evidence. Vandenberg was an Assistant Professor at the University of St. Thomas, while Hodges was an Associate Professor. (Dkt. 68-3 at para. 1; Dkt. 68-5 at para. 1) They also had different responsibilities and taught different courses. (Dkt. 60 at Ex. B-1) Accordingly, these statements are not proper comparator evidence, and the Defendant's motion to strike these statements is **GRANTED**.

### 4.  *Hodges's EEOC Charge and Letter of Determination*

St. Thomas asks the Court to strike Hodges's EEOC Charge and Letter of Determination (Dkt. 68 at Ex. 23) on the grounds that they consist of nothing more than conclusory allegations, they are irrelevant to Vandenberg's claims against St. Thomas, and the EEOC charge is unsworn, unauthenticated, and unverified. Vandenberg responds that the charge was signed under penalty of perjury and can be authenticated at trial.

Although the Plaintiff cites various cases that held that EEOC determination letters constitute admissible evidence, none of these cases involved a plaintiff trying to introduce the EEOC determination letter of a nonparty. *See Harris v. Fresenius Med. Care*, No. H-04-4807, 2006 WL 2065313 (S.D. Tex. July 24, 2006); *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396 (5th Cir. 1985); *Lindsey v. Prive Corp.*, 161 F.3d 886 (5th

Cir. 1998). For the reasons given above, this Court finds that Hodges is not similarly situated to Vandenberg. Accordingly, Hodges's own allegations against the Defendant are improper anecdotal evidence. Allowing Hodges's claims into evidence would significantly prejudice Defendant, forcing it to defend against each witness's claims and creating a "trial within a trial." *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000). Therefore, Defendant's motion to strike Dr. Hodges's EEOC charge and determination letter (Dkt. 68 at Ex. 23) is **GRANTED**.

### B. Vandenberg's Discrimination Claims Under Title VII and Section 1981

Defendant concedes that Vandenberg has established three of the four required elements for establishing a prima facie case of discrimination under Title VII and Section 1981: (1) Vandenberg is a member of a protected class; (2) Vandenberg was qualified for her position; and (3) the nonrenewal of Vandenberg's contract constitutes an adverse employment action. St. Thomas contends that the rest of Vandenberg's complaints do not rise to the level of adverse employment actions and that Vandenberg has failed to satisfy the fourth prong of her prima facie case because she cannot establish that other "similarly situated" employees were treated more favorably or that she was replaced by a person outside her protected class. The Court agrees.

First, Vandenberg claims that her placement on a PIP rises to the level of an adverse action because it was a set-up to terminate her and because she was relieved of her duties as course coordinator. She cites *Thompson v. City of Waco, Tex.* for the proposition that, "[i]n certain cases, a change in or loss of job responsibilities . . . may be so significant and material that it rises to the level of an adverse employment action." 764

F.3d 500, 504 (5th Cir. 2014). However, on the same page, the *Thompson* Court states that the "mere loss of some job responsibilities does not constitute an adverse employment action." *Id.* (internal quotation marks omitted) (collecting cases). Unlike in *Thompson*, Vandenberg does not plead facts that, if taken as true, constitute a demotion or significantly diminished responsibilities. *See id.* at 505. Vandenberg was able to, and did, continue teaching as an assistant professor.  Furthermore, the Fifth Circuit has held that "[a]n employer's decision to place an employee on a performance improvement plan is not an adverse employment action." *Welsch v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019); *Turner v. Novartis Pharma. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011). Accordingly, Vandenberg's placement on a PIP does not constitute an adverse employment action for the purposes of establishing a prima facie case of discrimination under Title VII or Section 1981.

Vandenberg also alleges that her contract was not renewed because she is White. However, she has failed to identify other similarly situated employees who are not White who were treated more favorably than she was under "nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Heggemeier v. Caldwell City, Tex.*, 826 F.3d 861, 868 (5th Cir. 2016). As a professor, Campbell-Law is not similarly situated to Vandenberg, an assistant professor. *Fuming Wu V. Tex. A & M Univ.*

*Sys.*, No. 4:10-CV-3690, 2011 WL 6130921, at *6 (S.D. Tex. Dec. 8, 2011). Campbell-Law was a higher rank than Vandenberg, had more teaching experience, and taught different courses. (Dkt. 69-C at 258:16–20, 259:17–21)

Next, Vandenberg claims that she was replaced by Yvette Rolle, a Black woman. Vandenberg offers no evidence to support this claim, other than Rolle's biography page from St. Thomas's website, which shows that Rolle was hired in 2016. (Dkt. 68 at Ex. 21) She makes no attempt to refute St. Thomas's evidence that Vandenberg's duties were assumed by other White assistant professors. (Dkt. 68-20 at para. 7, Interrog. No. 4) The mere fact that St. Thomas hired a Black assistant professor after refusing to renew the contract of a White assistant professor does not show discrimination.

Finally, Vandenberg fails to raise a genuine issue of material fact sufficient to show that St. Thomas's legitimate, non-discriminatory reason for not renewing her contract is mere pretext. Defendant's burden at this stage is "one of production, not of persuasion" and involves "no credibility assessment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F. 3d 224, 236 (5th Cir. 2016). While teaching at St. Thomas, Vandenberg received the lowest student evaluations of all nursing faculty and received complaints from students about her demeanor and her professionalism. These are legitimate reasons for not renewing Vandenberg's contract, and Vandenberg has failed to meet her burden of refuting these reasons by providing summary judgment evidence establishing that the Defendant intentionally discriminated against her. S*ee Murungi v. Xavier Univ. of La.*, 313 Fed. App'x. 686, 687 (5th Cir. 2008).

### C. Vandenberg's Retaliation Claim Under Title VII

To establish a prima facie case of retaliation, Vandenberg must show that: (1) she engaged in an activity protected by the applicable statutes; (2) she was subject to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). The employment action must be "materially adverse," one that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006). A plaintiff alleging retaliation based on a protected action must show "but for" causation, *i.e.* that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 352 (2013).

Being placed on a performance improvement plan may be the kind of "adverse action" that could support a retaliation claim. *Ray v. Tandem Computs., Inc.*, 63 F.3d 429, 435 (5th Cir. 1995). However, Vandenberg did not allege that she was discriminated against or that she engaged in any other protected action until after she was placed on a PIP. As a result, the PIP could not constitute an adverse action that shows retaliation because there was no protected action for which the PIP could have been retaliation.

According to Defendant, Tschirch decided not to renew Vandenberg's contract on 22, 2016. (Dkt. 60-B at para. 9; Dkt. 60 at Ex. B-1) Vandenberg disputes this and accuses St. Thomas of fabricating and backdating evidence. Viewing the metadata evidence in the light most favorable to the non-movant, the decision not to renew Vandenberg's contract may have occurred in April 2016, after Vandenberg filed her EEOC charge.

Even so, Vandenberg cannot establish that either her internal complaint on December 21, 2015 or her EEOC charge was the but-for cause of her contract non-renewal. Vandenberg relies on temporal proximity between the protected act and the adverse act to establish causation. However, in the Fifth Circuit, the "burden has now shifted to a heightened standard of 'but-for' causation, for which temporal proximity, without more, will not suffice." *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x. 414, 420 (5th Cir. 2016) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)).

St. Thomas has provided evidence that as dean of the nursing school, Tschirch reviewed faculty contracts at the same time each year. Vandenberg has offered no evidence other than her own subjective beliefs that she was retaliated against to dispute her employer's reason for the timing. *See Dixon v. Comal County, Tex.*, No. 5:09-CV-831, 2011 WL 675064, at *8 (W.D. Tex. Feb. 15, 2011) *aff'd*, 447 Fed. App'x. 638 (5th Cir. 2011) ("Once the employer offers a legitimate, non-discriminatory reason for the timing . . . the plaintiff must offer evidence to suggest that retaliation was the true motive.") Vandenberg herself has stated that no one at St. Thomas ever mentioned her race. (Dkt. 60-C at 307:15–18)

Vandenberg also alleges that Chambers harbored retaliatory motives towards Vandenberg and influenced Tschirch to fire her. "Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker . . . harbored any [discriminatory or] retaliatory animus. Under this theory, a plaintiff must establish that the person with a [discriminatory or] retaliatory motive somehow influenced the decisionmaker to take the

[tangible employment] action." *Higgins v. Lufkin*, 633 F. App'x. 229, 233 (5th Cir. 2015) (citing *Zamora v. City of Hous.*, 798 F.3d 326, 331 (5th Cir. 2015)). However, Vandenberg has failed to present summary judgment evidence establishing that Chambers had the required animus towards Vandenberg and the required influence over Tscirch.

## CONCLUSION

The Court finds that summary judgment for Defendant on Vandenberg's Title VII and Section 1981 claims is appropriate, and Defendant's motion for summary judgment is hereby **GRANTED**. All other pending motions are denied as moot. The Court will issue a final judgment simultaneously with this opinion.

SIGNED at Houston, Texas, this 20th day of November, 2020.

George C. Hanks Jr
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE